UNITED STATES *v.* URDIKA WIRE DIE WORKS (No. 3416) [1]

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence,* Assistant Attorney General (*Lyman Ward* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellee.

[Oral argument October 16, 1931, by Mr. Folks; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court sustaining a protest of appellee.

The merchandise involved consists of drawing dies containing more than six-tenths of 1 per centum of tungsten, used in drawing wire, the object of the operation being to reduce the diameter of the wire. The merchandise was invoiced as "80 substitute drawing dies, 'Elmarid,' .009–.020."

These articles were classified by the collector and assessed for duty under the provisions of paragraph 398 of the Tariff Act of 1922, which reads as follows:

PAR. 398. Twist drills, reamers, milling cutters, taps, dies, and metal-cutting tools of all descriptions, not specially provided for, containing more than six-tenths of 1 per centum of tungsten * * * 60 per centum ad valorem.

t T. D. 45292

Appellee protested the classification and claimed that the merchandise was dutiable under the following provisions of paragraph 372 of said tariff act:

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: * * *

Appellee introduced testimony in support of its protest, and two samples of the drawing dies involved were offered and received in evidence. Appellant offered no testimony.

The lower court sustained the protest, holding that the articles in question should have been classified under said paragraph 372 as parts of machines, not specially provided for, and entered judgment accordingly.

The question before us is whether dies of the character here involved, which do not cut metal, are included in the use of the word "dies" in said paragraph 398. It is conceded that in the use of the dies here in question no metal is cut or wasted.

Appellee contends that the term "dies" embraces such a wide variety of articles as to make the provision therefor, in paragraph 398, uncertain and ambiguous, when the context of the paragraph is considered, and that such ambiguity should be resolved by the application of the rule of *noscitur a sociis.*

On the other hand, the appellant contends that said paragraph 398 contains an *eo nomine* designation of dies having the specified tungsten content without limitation, except for the phrase "not specially provided for," and that there is no ambiguity in the paragraph warranting the application of the rule of *noscitur a sociis;* that the articles in question are within the common meaning of the word "dies," and that dies containing more than six-tenths of 1 per centum of tungsten are more specifically provided for in said paragraph 398 than as parts of a machine under paragraph 372.

It is well established that the rule of *noscitur a sociis* should be applied only where there is a doubt as to the meaning of a word or expression used by the legislative body in enacting a statute. *United States v. R. F. Downing & Co.,* 17 C. C. P. A. (Customs) 194, T. D. 43645.

That the articles here in question come within the common meaning of the word "dies" is admitted by appellee. They were so referred to in the testimony of appellee's principal witness.

Funk & Wagnalls' Standard Dictionary contains the following definition of the word "die":

3. A hard metal former or device for shaping, impressing, or cutting out. Specifically: (1) One of a pair with intaglio designs, between which a planchet is stamped with an obverse and a reverse design in relief, as in coining. (2) One of a pair between which a metal blank is forced or forged into a special shape, as a spoon. (3) One of a pair, one cameo and the other intaglio, between which

a sheet, as of metal, is embossed. (4) A block or counter having an orifice through which a punch passes, as in cutting out sheet metal, or punching holes in metal sheets, nuts, etc. (5) A steel frame having a knife-edge of some special outline, as for cutting out shoe-soles or for cutting cards, etc., into irregular shapes. (6) A hardened block of steel having teeth by which to cut male screw threads on a metal object, as a bolt. (7) A hard steel roller engraved in intaglio, to mill a coin or the like by pressure.

It will be observed that the general definition above quoted states that a die is an article for shaping, for impressing, or for cutting out. That is, the common meaning of the word embraces three general classes only one of which involves cutting.

It will also be observed that of the more specific definitions above quoted only two out of seven describe dies which involve a cutting operation.

We think our decision in the case at bar is governed by the case of *United States* v. *R. F. Downing & Co.*, *supra.* In that case the question was as to whether the word "tweezers," as used in paragraph 354 of the Tariff Act of 1922, included jewelers' tweezers.

The provision of said paragraph 354 there under consideration reads:

> * * * cuticle knives, corn knives, nail files, tweezers, hand forceps, and parts thereof, finished or unfinished, by whatever name known, 60 per centum ad valorem: * * *.

There, as here, the question involved was whether the rule of *noscitur a sociis* was applicable. We held that it was not. The court, speaking through Presiding Judge Graham, after stating the rule as to the application of the doctrine, said:

> This being the law, what need have we here to call upon the rule of *noscitur* to aid in our construction of the meaning of the term "tweezers" used by Congress? The language is plain and unambiguous. Webster's New International Dictionary (1925) thus defines the word:

> 1. A small pincerlike implement for grasping or extracting.

> The language being thus plain and unambiguous, we are not permitted to limit its meaning by a sort of judicial legislation; we would only be justified in restricting the term to tweezers used for manicuring or pedicuring purposes by a showing that, irrespective of the language used, the congressional intent was to so limit it. No such showing has been made here.

The court further said:

> There might be room for the application of the doctrine of *noscitur a sociis* if some of the other articles specifically named in this statute were in question; as, for example, "corn knives" or "nail files." These expressions are capable of two meanings, and they are therefore ambiguous and uncertain. The court might well hold that the *noscitur* rule would apply in such cases and that the articles were to be restricted to knives and files used in manicuring or pedicuring. But for us to apply the rule in the case of "tweezers" would be akin to our construing the term "air rifles," as it appears in the toy paragraph of the tariff act

of 1922, 1414, without any other considerations than the language of the paragraph itself, as applicable only to such air rifles as are used for toys.

So, in the case at bar, if Congress had intended that the word "dies," as used in said paragraph 398, should be limited to cutting dies, it might easily have said so by inserting the word "cutting" before the word "dies."

Furthermore, the rule of *noscitur a sociis* is only a rule to give aid in arriving at the intention of Congress and must yield if a contrary intent can be otherwise ascertained.

If there were any doubt as to the proper construction of said paragraph 398, an examination of the legislative history of the paragraph convinces us that Congress had no intention, in its use of the word "dies" therein, to limit it to cutting dies. This paragraph is new in the Tariff Act of 1922. Neither the said paragraph nor any similar provision was in House bill 7456 nor in the bill as reported by the Finance Committee to the Senate. It appears from the debates in the Senate that the bill provided for an increased duty upon tungsten metal. Attention was called to the fact that such increase would require a compensatory duty upon twist drills, etc., containing tungsten. This was acknowledged, and the chairman of the committee stated that the committee would report a new paragraph that would take into consideration this increase in the duty on tungsten. Later this was done, and paragraph 398 was reported as an amendment in the form that it now has in the tariff act, was adopted by the Senate and agreed to in conference.

It therefore appears that the tungsten content of certain articles was the primary consideration in the enactment of paragraph 398, and accordingly there was just as much reason for including dies of the character here in question as there was for including cutting dies.

The tungsten content of the steel enables it to retain its hardness, and it would seem that this quality is desirable in a wire-drawing die.

Were we to give the construction to paragraph 398 contended for by appellee we would eliminate from its provisions many dies containing tungsten which we are convinced Congress intended to include. Therefore, if a consideration of the legislative history of paragraph 398 were necessary to our decision in this case, it indicates that Congress used the word "dies" therein without limitation (other than that of the tungsten content) designedly, and that it intended that all dies of every kind containing the designated amount of tungsten should fall within its provisions unless specially provided for.

It is unnecessary for us to pass upon the question of whether the dies involved are parts of machines, because, assuming that they are such, they are more specifically described in paragraph 398. Paragraph 372, under which the dies were found dutiable by the court below, makes no reference to tungsten. Furthermore, dies contain-

ing more than six-tenths of 1 per centum of tungsten are not elsewhere provided for in the Tariff Act of 1922.

The judgment of the United States Customs Court is *reversed*.

GARRETT, Judge, specially concurring:

While I concur in the conclusion reached in this case, I do so largely upon the ground that it seems to be conceded by appellee that the articles involved are "dies." In any event, there is no proof in the record upon this point sufficient to overcome the presumption of correctness attaching to the collector's classification. From my study of the definitions of dies and of wire-drawing devices, as contained in mechanical publications and in the dictionary definitions of dies quoted in Judge Lenroot's opinion, I think there is some doubt whether, in the common meaning of the word "die," a wire-drawing device is a die in the sense of paragraph 398, and deem it proper to state that I do not regard the decision in this case as rendering that point *stare decisis*.